IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-03053-NYW

RICKY T. GRAHAM, and
CONNIE L. ARCHULETA,

      Plaintiffs,

v.

THE UNITED STATES OF AMERICA,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

      This matter is before the court on the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) (the "Motion" or "Motion to Dismiss") filed on February 4, 2022 by Defendant United States of America. [Doc. 16]. The court considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes dated January 5, 2022. [Doc. 9]. Being fully advised in the premises, the court concludes that oral argument would not materially assist in the resolution of the Motion to Dismiss. Upon review of the Motion, the related briefing, and the applicable case law, the Motion to Dismiss is **GRANTED**.

## BACKGROUND

      The court draws the following facts primarily from the Complaint for Declaration to Quiet Title Pursuant to 28 U.S.C. § 2409a (the "Complaint"). [Doc. 1].[1] Plaintiffs Ricky T. Graham

---

[1] As explained below, because the United States mounts a factual attack on this court's subject matter jurisdiction, the court does not assume the truthfulness of the allegations in the Complaint and may consider documents outside of the Complaint in ruling on the Motion to Dismiss. *United States v. Rodriquez Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001). The court includes factual details from documents outside of the Complaint where necessary, and notes that the Parties appear

("Mr. Graham") and Connie L. Archuleta ("Ms. Archuleta") are siblings who claim title to mineral interests in real property situated in Adams County, Colorado (the "Property"). [*Id.* at ¶¶ 2, 4, 31]. In 1902, the United States conveyed the Property to David McD. Graham ("David Graham I") via United States patent, "without mineral reservation." [*Id.* at ¶¶ 25-26; Doc. 1-5]. The Parties agree that a mortgage was recorded on the Property in 1903. [Doc. 16 at 2; Doc. 17 at 3; Doc. 17-2]. A notice of lis pendens was later filed in the District Court of Adams County, Colorado to foreclose on the mortgage, [Doc. 17 at 3; Doc. 17-3], and the mortgage was foreclosed upon in 1909. [Doc. 16 at 2; Doc. 16-1 at 11].

The Property subsequently passed through several owners. *See* [Doc. 16 at 2; Doc. 17 at 4; Doc. 16-1 at 11-28; Doc. 17-8; Doc. 17-9]. Eventually, the Property was owned by Ernest L. Tiedeman and Myra F. Tiedeman (the "Tiedemans"). [Doc. 16-1 at 28]. In August 1942, the United States recorded a notice of lis pendens on the Property, stating that the government had initiated an action "to purchase and acquire by condemnation the absolute fee simple title" to 20,000 acres of land, which included the Property. [Doc. 16-1 at 29]. The Tiedemans conveyed the Property to the United States through a deed recorded on January 26, 1943 (the "1943 Deed"). [*Id.* at 32; Doc. 1-6].

Plaintiffs allege that they came into possession of mineral interests associated with the Property as follows: David Graham I died intestate in 1908. [Doc. 1 at ¶¶ 30, 32]. At the time of his death, David Graham I had four living children,[2] including Thomas A. Graham ("Thomas

---

to substantially agree on the relevant facts concerning the subject Property's chain of title. *See* [Doc. 16; Doc. 17].

[2] David Graham I and his wife, Elizabeth W. Graham, had five children, but one child preceded David Graham I in death. [Doc. 1 at ¶ 34].

2

Graham I"). [*Id.* at ¶ 34]. Plaintiffs allege that Thomas Graham I acquired a one-fourth portion of the mineral rights after David Graham I's passing. [*Id.* at ¶ 35].

Thomas Graham I and his wife, Camille Graham, had four children, including Thomas M. Graham ("Thomas Graham II"). [*Id.* at ¶ 38]. The three other children preceded Thomas Graham I in death, leaving Thomas Graham II as the sole heir to Thomas Graham I and Camille Graham. [*Id.*]. Thus, Plaintiffs allege that after the deaths of Thomas Graham I and Camille Graham, the subject mineral interests were passed down to Thomas Graham II—Plaintiffs' father. [*Id.* at ¶ 39]. It is Plaintiffs' position that the subject mineral rights were conveyed to them upon Thomas Graham II's death. [*Id.* at ¶ 45].[3]

The United States, however, claims an ownership interest in the subject mineral rights. [*Id.* at ¶ 3]. Plaintiffs state that they became aware of the United States' claim to the mineral rights on December 6, 2018 via a letter sent by the United States Bureau of Land Management to Ms. Archuleta. [*Id.* at ¶ 41]. According to Plaintiffs, their "predecessors-in-interest were unaware, and should not have known to be aware, of any such claim by the United States as to the real property and/or the mineral interests" prior to Ms. Archuleta's receipt of the 2018 letter. [*Id.*]. On May 18, 2020, Plaintiffs filed a Petition to Determine Heirship in the District Court for Adams County, Colorado, and filed a Notice of Hearing to Interested Persons pursuant to Colo. Rev. Stat. § 15-12-1303 on June 23, 2020. [*Id.* at ¶¶ 4, 5]. Though the United States never appeared in state court, it took the position through letters to Plaintiffs' counsel and the court that jurisdiction in state court was improper. *See, e.g.*, [*id.* at ¶¶ 6, 10, 12]. On March 22, 2021, the state court "suspended proceedings until a federal action was completed." [*Id.* at ¶ 13].

---

[3] While the Complaint does not indicate when Thomas Graham II passed away, a family tree submitted by Plaintiffs represents that Thomas Graham II passed away in 2002. *See* [Doc. 1-9].

3

Plaintiffs initiated this federal action on November 12, 2021 pursuant to the Quiet Title Act, 28 U.S.C. § 2409a *et seq*. *See generally* [*id.*]. In their Complaint, Plaintiffs seek a declaratory judgment[4] that (1) David Graham I had "right, title, and interest" in the subject minerals at the time of his death; (2) the United States has no interest in the subject minerals; and (3) Plaintiffs "are the heirs and present owners of a [one-fourth] interest . . . of the minerals." [*Id.* at ¶ 47].

Defendant filed the instant Motion to Dismiss on February 4, 2022. [Doc. 16]. In the Motion, Defendant argues that this court lacks subject matter jurisdiction over Plaintiffs' claim because the claim is barred by the Quiet Title Act's statute of limitations. *See* [*id.* at 1]. Plaintiffs responded in opposition on February 25, 2022, arguing that their Quiet Title Act claim is not barred because neither Plaintiffs nor their predecessors in interest had actual or constructive knowledge of any claim to the mineral rights by the United States until 2018. *See generally* [Doc. 17]. With Defendant's consent and with leave of court, *see* [Doc. 20; Doc. 21], Plaintiffs filed a Supplemental Memorandum in Support of Response in Opposition to Motion to Dismiss (the "Supplement"). [Doc. 22]. Defendant subsequently filed a Reply. [Doc. 23]. The Motion is thus ripe for disposition, and I consider the Parties' arguments below.

**LEGAL STANDARDS**

**I.    Rule 12(b)(1)**

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, courts "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *Wilderness Soc. v. Kane Cty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). Indeed, courts

---

[4] The Parties agree that the Declaratory Judgment Act does not form the basis of a cause of action or waiver of sovereign immunity distinct from the Quiet Title Act. [Doc. 16 at 6; Doc. 17 at 12].

4

have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *1mage Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006)).

Attacks on subject matter jurisdiction may take two different forms—a facial attack or a factual attack—which implicate different analytical frameworks. The United States Court of Appeals for the Tenth Circuit has explained that

> [m]otions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may take one of two forms. First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint. In addressing a facial attack, the district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. In addressing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

*United States v. Rodriquez Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (quotation and citations omitted)). The burden of establishing jurisdiction rests with the party asserting jurisdiction. *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017).

## II. Sovereign Immunity

Sovereign immunity shields the United States and its agencies from suit. *San Juan Cty. v. United States*, 754 F.3d 787, 792 (10th Cir. 2014). This is so unless "Congress unequivocally expresses its intention to waive the government's sovereign immunity in the statutory text." *Governor of Kan. v. Kempthorne*, 516 F.3d 833, 841 (10th Cir. 2008) (quotation omitted). Application of the sovereign immunity doctrine precludes a federal court's jurisdiction over a case. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *see also Rigsby v. United States*, 91 F. App'x 103, 105 (10th Cir. 2004) (a court

lacks subject matter jurisdiction where "no sovereign immunity was waived."). "Consequently, plaintiffs may not proceed unless they can establish that the United States has waived its sovereign immunity with respect to their claim." *Iowa Tribe Of Kan. & Neb. v. Salazar*, 607 F.3d 1225, 1232 (10th Cir. 2010).

## ANALYSIS

The United States argues that Plaintiffs' predecessors in interest knew or should have known in 1943—based on the recorded 1943 Deed—that the United States had a claim to the subject mineral interests and thus, Plaintiffs' Quiet Title Act claim accrued at that time. [Doc. 16 at 5-6]. It follows, according to Defendant, that because this case was not filed within the applicable statute of limitations, the government's waiver of sovereign immunity is inapplicable here and the court lacks subject matter jurisdiction over this case. [*Id.* at 6]. In response, Plaintiffs argue that they and their predecessors in interests did not know, and should not have known, of any claim asserted by the United States based on the 1943 Deed. [Doc. 17 at 8]. They argue that "there is ambiguity as to whether the minerals and surface [of the Property] had been severed and whether documents were properly recorded," and due to this ambiguity, it was not unreasonable for Plaintiffs to not have discovered the claim until 2018, at which point Plaintiffs assert that their claim accrued, and the statute of limitations began to run. [*Id.* at 8-12].

### I.     The Quite Title Act

The Quiet Title Act is the "exclusive means by which adverse claimants [may] challenge the United States' title to real property." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983). Through the Act, Congress waived the federal government's sovereign immunity to "suits seeking to quiet title to certain federal lands," *Sw. Four Wheel Drive Ass'n. v. Bureau of Land Mgmt.*, 363 F.3d 1069, 1071 (10th Cir. 2004), providing that the United States

may be sued "to adjudicate a disputed title to real property in which the United States claims an interest." 28 U.S.C. § 2409a(a). But the Act's waiver of sovereign immunity is "limited in scope," and "the terms of the Act 'define the extent of the court's jurisdiction.'" *Warren v. United States*, 234 F.3d 1331, 1335 (D.C. Cir. 2000) (quoting *United States v. Mottaz*, 476 U.S. 834, 841 (1986)).

Relevant here, the Quiet Title Act contains a twelve-year statute of limitations, *see* 28 U.S.C. § 2409a(g), which is "strictly construed" in the government's favor. *Rio Grande Silvery Minnow (Hybognathus amarus) v. Bureau of Reclamation*, 599 F.3d 1165, 1176 (10th Cir. 2010). "Timeliness under [the Quiet Title Act] is a jurisdictional prerequisite to suit," and a federal court thus lacks jurisdiction over an untimely claim. *Knapp v. United States*, 636 F.2d 279, 282 (10th Cir. 1980). A cause of action under the Act accrues when the plaintiff or his or her predecessor in interest "knew or should have known of the claim of the United States" to the subject property. 28 U.S.C. § 2409a(g); *Rosette, Inc. v. United States*, 141 F.3d 1394, 1397 (10th Cir. 1998). As a federal statute, the Quiet Title Act "must be interpreted in accordance with principles of federal law," but courts "may properly look to state law as an aid in determining the application of statutory language to specific facts." *Vincent Murphy Chevrolet Co. v. United States*, 766 F.2d 449, 451 (10th Cir. 1985) (quotation omitted). "Local practices and local rules are particularly indicative of whether a party should have known a relevant fact." *Amoco Prod. Co. v. United States*, 619 F.2d 1383, 1387 (10th Cir. 1980).

The Tenth Circuit has instructed that the Act's use of the term "should have known" "import[s] a test of reasonableness." *Id.* "Only if it was unreasonable for the [plaintiff] to have failed to discover the claim of the United States should the limitations provision of [the Act] become operative." *Id.* But "[k]nowledge of the claim's full contours is not required" for there to be sufficient notice of a claim under § 2409a(g). *Knapp*, 636 F.2d at 283. Rather, "[a]ll that is

7

necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff's." *Id.*; *see also George v. United States*, 672 F.3d 942, 946 (10th Cir. 2012) (explaining that a "claim" is "some interest adverse to the plaintiff's" or "an assertion of right to something"). Whether the government's claim to the disputed property has merit is irrelevant, and "[o]ne can be on *notice* of a claim even if that claim lacks any legal *merit*." *Id.* (emphases in original).

## II.    When Plaintiffs' Claim Accrued

The Parties dispute when Plaintiffs—or their predecessors in interest—knew or should have known of the United States' claim to the mineral rights and, thus, when Plaintiffs' cause of action accrued under the Quiet Title Act.  The United States argues that Plaintiffs' predecessors in interest knew, or should have known, of its claim to the minerals when the 1943 Deed conveying the Property to the United States was recorded.  [Doc. 16 at 6].  Plaintiffs maintain, however, that the subject mineral rights were not conveyed to the United States in the 1943 Deed or "any preceding document that was filed." [Doc. 17 at 4].  Plaintiffs assert that there is ambiguity as to whether the subject mineral rights were severed from the Property's surface estate, and due to this ambiguity, it was not unreasonable for Plaintiffs to not have discovered the United States' claim until Ms. Archuleta received the letter from the Bureau of Land Management in 2018.  [*Id.* at 10].

The Tenth Circuit has held that one condition that satisfies the "should have known" standard for purposes of assessing the accrual of a Quiet Title Act claim is "constructive notice under applicable state recording statutes." *Amoco*, 619 F.2d at 1387.  In other words, "as a matter of federal law, . . . a party 'should have known' of a claim of the United States at the time he was clearly and properly imputed with constructive notice of that claim under local recording statutes." *Id.* at 1388.  The *Amoco* court, however, simultaneously cautioned that "[t]he doctrine of

constructive notice, which creates a fiction and deals with hypothetical facts, is a harsh doctrine which should be resorted to reluctantly and construed strictly." *Id.*

Relevant here, Colorado law institutes a race-notice recording scheme. *See* Colo. Rev. Stat. § 38-35-109. "Under Colorado's race-notice statute, . . . [the] proper recording of documents provides constructive notice of interests affecting title." *Collins v. Scott*, 943 P.2d 20, 22 (Colo. App. 1996); *Meyer v. Haskett*, 251 P.3d 1287, 1293 (Colo. App. 2010) ("When an instrument regarding property is properly recorded, constructive notice is provided to all."). "Constructive notice is, for all practical purposes, record notice. When a party properly records [its] interest in property with the appropriate clerk and recorder, [it] constructively notifies 'all the world' as to his claim." *Franklin Bank, N.A. v. Bowling*, 74 P.3d 308, 313 (Colo. 2003).

The 1943 Deed provides that the Tiedemans:

do grant, bargain, sell, convey and confirm, unto the United States of America and its assigns forever, all the following described lots or parcels of land, situate, lying and being in the County of Adams and State of Colorado, to-wit:

[The Property], together with 40 acre water right from the Northern Colorado Irrigation Company, with all lateral and pipe line right of way and ditch appurtaining [sic], being same water right as conveyed in Book 95, Page 142.

. . .

TOGETHER with all and singular the hereditaments and appurtenances thereto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof; and all the estate, right, title, interest, claim and demand whatsoever of the said parties of the first part, either in law or equity, of, in and to the above bargained premises, with the hereditaments and appurtenances.

TO HAVE AND TO HOLD the said premises above bargained and described, with the appurtenances, unto the United States of America and its assigns forever. And said parties of the first part, for themselves[,] their heirs, executors, and administrators, do covenant, grant, bargain and agree to and with the United States of America and its assigns, that at the time of the ensealing and delivery of these presents, they are well seized of the premises above conveyed, as of good, sure, perfect, absolute and indefeasible estate of inheritance, in law, in fee simple, and

> have good right, full power and lawful authority to grant, bargain, sell and convey the same in manner and form as aforesaid, and that the same are free and clear from all former and other grants, bargains, sales, liens, taxes, assessments and encumbrances of whatever kind or nature soever.

[Doc. 1-6 at 1]. In Colorado, "if a deed is unambiguous, its terms must be enforced as written." *Moeller v. Ferrari Energy, LLC*, 471 P.3d 1258, 1261 (Colo. App. 2020).

"The reservation of a mineral estate necessarily severs it from the surface estate, creating multiple estates in the same land," *McCormick v. Union Pac. Res. Co.*, 14 P.3d 346, 349 (Colo. 2000), *as modified* (Dec. 14, 2000), and the grantee of the surface estate "has no title to, or rights in, the minerals included in the reserved mineral estate." *McCormick v. Union Pac. R. Co.*, 983 P.2d 84, 86 (Colo. App. 1998), *aff'd sub nom. McCormick*, 14 P.3d at 346. "However, such a severance can be accomplished only by clear and unambiguous language." *Osborne v. Holford*, 575 P.2d 866, 867 (Colo. 1978); *see also Radke v. Union Pac. R. Co.*, 334 P.2d 1077, 1088 (Colo. 1959) ("[T]he severance must be by clear and distinct wording in the conveyance."). "Until . . . a severance occurs the ownership of the surface carries with it the ownership of the underlying minerals." *Id.* Indeed, "[i]t is well established that a conveyance of land by general description, without any reservation of a mineral interest, passes title to both the land and the underlying mineral deposits." *O'Brien v. Vill. Land Co.*, 794 P.2d 246, 249 (Colo. 1990).

Here, the 1943 Deed does not expressly contain any reservation of mineral rights in the conveyance of the Property from the Tiedemans to the United States. *See* [Doc. 1-6]; *see also Bolser v. Bd. of Comm'rs for Cty. of Gilpin*, 100 P.3d 51, 53 (Colo. App. 2004) ("A reservation, on the one hand, occurs where the granting clause conveys the totality of the land described, but reserves to the grantor one or more of the rights that would comprise a fee simple absolute."). Nor does the 1943 Deed plainly limit the conveyance to the Property's surface estate. *See* [Doc. 1-6]. In other words, the Deed does not contain "clear and unambiguous language" reserving any

mineral interest in the subject Property, *Osborne*, 575 P.2d at 867, and because the 1943 Deed contains only a conveyance "by general description, without any reservation of a mineral interest," the 1943 Deed may be construed to transfer *all* rights in the Property, including rights in the underlying mineral deposits, to the United States.  *O'Brien*, 794 P.2d at 249; *cf. United States v. Dunn*, 557 F.3d 1165, 1177 (10th Cir. 2009) (applying Utah law) ("The deed's language, however, is clear: the deed does not mention, explicitly or by reference, the disputed property; thus, it does not convey any rights to the property.").

Moreover, the 1943 Deed states that the conveyance of the Property is "free and clear of all former and other grants, bargains, sales, liens, taxes, assessments **and encumbrances of whatever kind or nature soever**."  [Doc. 1-6 at 1 (emphasis added)].  "An encumbrance . . . is a right or interest in the land which diminishes the value of, but is not inconsistent with the ability to convey, fee title."  *Feit v. Donahue*, 826 P.2d 407, 410 (Colo. App. 1992); *see also* 2 Colo. Prac., Methods Of Practice § 64:25 (7th ed.) ("Encumbrances include . . . reservations and reversionary interests." (quotation omitted)).  "Valid reservations or exceptions of mineral rights presumptively constitute a sufficient defect in title, or encumbrance, to render a seller's title unmarketable."  *Knight v. Devonshire Co.*, 736 P.2d 1223, 1224 (Colo. App. 1986); *see also Eychaner v. Springer*, 527 P.2d 903, 904 (Colo. App. 1974) ("The reservation of mineral rights constitutes an encumbrance rendering the title unmarketable.").  Thus, not only is the 1943 Deed silent with respect to any prior reservation or severance of the Property's mineral interests, but on its face, the 1943 Deed purports to effect a conveyance of Property without *any* encumbrances—for example, a prior reservation of mineral rights.

Although Plaintiffs argue that the 1943 Deed is insufficient to provide notice of any claim to the Property's mineral estate because the Deed conveyed only the Property's surface estate, *see*

11

[Doc. 17 at 11 ("Here, the recording of the 1943 Deed, which Plaintiffs and their predecessors in interest believe to only relate to the surface estate, is not evidence that the 'clock' as to the statute of limitations began to run in 1943.")], the court is respectfully not persuaded by this argument. Plaintiffs cite to no language from the 1943 Deed suggesting its conveyance of the Property is so limited, *see generally* [*id.*], nor do they point to any language that would suggest the existence of an "ambiguity" as to whether a severance of the mineral and surface estates has occurred. [*Id.* at 9]. Under Colorado law, the recordation of the 1943 Deed is sufficient to provide notice to "all the world," including to Plaintiffs' predecessor in interest, Thomas Graham I, *see* [Doc. 1 at ¶¶ 37, 39, 45], that the United States had a claim—i.e., "some interest adverse to the [Plaintiffs']," *George*, 672 F.3d at 946—to the *entirety* of the Property, including its mineral rights. *Franklin Bank*, 74 P.3d at 313.[5]

Plaintiffs, however, assert that they have always believed that their family owns the subject mineral interests and that it was not unreasonable for them to have not discovered the United States' claim until 2018. [Doc. 17 at 9-10]. In support of their argument, Plaintiffs rely on three internal government letters and a government tract register. *See* [Doc. 17 at 5; Doc. 22 at 2]. First, Plaintiffs represent that in 1981, the Chief of the Real Estate Division of the United States Army Corps of Engineers issued a letter to the Commander of the United States Army Corps of Engineers (the "1981 Letter") which states that 80 acres of the land that would eventually become the Rocky

---

[5] In reaching this conclusion, the court does not pass on the merits of any Party's claim to the mineral rights or the legal sufficiency of the 1943 Deed and does not make any definitive interpretative ruling as to the 1943 Deed. Rather, the court's ruling is strictly limited to whether the 1943 Deed would provide sufficient notice of the United States' claim to the mineral interests at issue in this case.

Mountain Arsenal[6] was subject to a reservation of mineral rights by David Graham I. [Doc. 17-11 at 2]. Plaintiffs state that the 1981 Letter is evidence that the United States has previously taken the position that the mineral rights were owned by David Graham I and supports Plaintiffs' argument that their predecessors in interest were unaware, and should not have known to be aware, of any claim to the minerals by the United States. [Doc. 17 at 5, 10]. In addition, Plaintiffs rely on two letters sent by the Office of the United States Attorney General to Henry L. Stimson, the then-United States Secretary of War: one letter sent in 1942 (the "1942 Letter") and the other sent in 1943 (the "1943 Letter"). *See* [Doc. 22 at 1]. The 1942 Letter and the 1943 Letter each state that the title conveyed by the Tiedemans to the United States was subject to "[w]ater and mining rights." [Doc. 22-1 at 1-2; [Doc. 22-2 at 1]. Finally, the tract register, which appears to be a document of the Office of the Chief of the Real Estate Division, lists the Property among other parcels of land and, in "remarks" associated with the Property, states: "Mineral rights reserved by [David Graham I]." [Doc. 22-4 at 1].

Plaintiffs argue that the Letters and the tract register "confirm[] the United States' position that [David Graham I] and his successors-in-interest held an interest in the Minerals." [Doc. 22 at 2]. Plaintiffs suggest that, because the United States apparently has, in the past, taken the position that the conveyance of the Property was subject to a reservation of mineral rights to David Graham I, this demonstrates an ambiguity as to whether the mineral rights were severed from the Property's surface estate. [Doc. 17 at 9-10]. Further, they maintain that the United States cannot now argue, in contravention of its prior position, that Plaintiffs had constructive notice of the government's claim to the mineral rights in 1943. [*Id.* at 11-12].

---

[6] The Parties agree that the United States' notice of lis pendens and the subsequent conveyance of the Property from the Tiedemans to the United States was for the purpose of establishing the Rocky Mountain Arsenal. [Doc. 16 at 2-3; Doc. 17 at 4].

13

The court is respectfully not persuaded by Plaintiffs' arguments. Although Plaintiffs may have subjectively believed that their family always retained ownership of the mineral interests, the applicable test to determine when the statute of limitations began to run is an objective one—whether it was reasonable for the plaintiff (and their predecessors in interest) to have not discovered the government's claim. *Amoco*, 619 F. 2d at 1388. Moreover, while Plaintiffs suggest that because they believed that their family owned the mineral interests, there is ambiguity as to whether there was a severance of the mineral and surface estates, Plaintiffs—who bear the burden of establishing this court's jurisdiction, *Kline*, 861 F.3d at 1180—have provided no documentary evidence suggesting that any such severance occurred. Indeed, Plaintiffs themselves "admit that the available recorded deeds provide no evidence that the minerals and surface were severed." [Doc. 17 at 9]. Plaintiffs have cited no legal authority establishing that their subjective belief that a severance occurred at some point prior to 1943 is sufficient to nullify the constructive notice of the United States' claim provided by the 1943 Deed. *See generally* [*id.*].

Similarly, the court is unpersuaded by Plaintiffs' suggestion that the 1942, 1943, and 1981 Letters, as well as the tract register, demonstrate that a severance of the mineral rights occurred at some time prior to 1943 because they "confirm[] the United States' position that [David Graham I] and his successors-in-interest held an interest in the minerals." [Doc. 22 at 2]. The question before the court is not whether the United States believed that David Graham I held a reservation of mineral rights, or even whether such a severance or reservation of rights occurred; rather, the limited question before the court is whether Plaintiffs' predecessors in interest should have known—based on the 1943 Deed—of the United States' claim to the subject minerals, such that the statute of limitations on Plaintiffs' claim began to run upon the recording of the Deed. *Amoco*, 619 F.2d at 1387. Plaintiffs do not suggest that these documents—which appear to be internal

14

documents—were a matter of public record, that Plaintiffs' predecessors in interest knew of these documents, or that their predecessors in interest otherwise knew of the United States' apparent position on the mineral rights, such that these documents would alter the analysis as to whether a reasonable person in Plaintiffs' predecessors' position should have known of the United States' claim.[7]  *See generally* [Doc. 17; Doc. 22].  Accordingly, the court cannot conclude that these documents are relevant to the court's present inquiry.

Finally, Plaintiffs argue that because the United States, as recently as 1981, has taken the position that a reservation or severance of the Property's mineral estate occurred, it cannot now charge Plaintiffs' predecessors in interest with constructive notice of the United States' claim as of 1943.  [Doc. 17 at 11-12].  But this argument goes to the merits of the United States' claim to the mineral rights, not whether Plaintiffs' predecessors were *on notice* of the claim.  Even "invalid government claims trigger the [Quiet Title Act] limitations period," *Rio Grande Silvery Minnow*, 599 F.3d at 1176 (quotation omitted), and the merits of the government's claim are not relevant to the limited inquiry presently before the court.  *George*, 672 F.3d at 946.

Again, the court emphasizes that the question before the court is not who holds title to the mineral interests or whether the United States' claim to the interests is valid; rather, the only question before the court is whether the 1943 Deed provided constructive notice to Plaintiffs' predecessors in interest of of the United States' claim to the mineral rights, such that the predecessors should have known of the claim at that time.  The court concludes that under Colorado law, it did.  Accordingly, based on the record before the court, the court finds that the statute of limitations on Plaintiffs' claim began to run in 1943, when the 1943 Deed was properly

---

[7] Nor do Plaintiffs argue that the United States is somehow estopped from asserting its statute of limitations defense.  *Compare* [Doc. 17; Doc. 22] *with* [Doc. 23 at 7].

recorded. And because Plaintiffs' claim was not filed within twelve years of that date, their claim is barred by the statute of limitations, which excepts Plaintiffs' claim from the Quiet Title Act's limited waiver of sovereign immunity and deprives this court of jurisdiction. The Motion to Dismiss for lack of jurisdiction is therefore **GRANTED**, and Plaintiffs' Quite Title Act claim is **DISMISSED without prejudice**. *Brown v. Buhman*, 822 F.3d 1151, 1179 (10th Cir. 2016) (dismissal for lack of jurisdiction should be without prejudice).

### III.     Plaintiffs' Ancillary Requests

In their Response, Plaintiffs argue that "the court should grant the Plaintiffs leave to amend, should allow the parties to argue the jurisdictional issue, or should provide the Plaintiffs with an opportunity to discover facts necessary to establish jurisdiction." [Doc. 17 at 6]. Insofar as Plaintiffs' statement can be construed as a request for relief, the court declines to grant such relief here. Under the Local Rules of Practice for this District, "[a] motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document." D.C.COLO.LCivR 7.1(d). Thus, Plaintiffs have not formally moved to amend their Complaint, and "a court need not grant leave to amend when a party fails to file a formal motion." *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999); *see also Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir.1994) (district courts are not required "to engage in independent research or read the minds of litigants to determine if information justifying an amendment exists."). Similarly, the court declines to *sua sponte* order jurisdictional discovery, where there is no present argument before the court concerning the necessity or scope of any such discovery.

However, the court will permit Plaintiffs to file a motion to amend their Complaint or a motion for jurisdictional discovery on or before **May 31, 2022**, should Plaintiffs believe that such

a motion is appropriate and warranted in this case and only after a robust meet and confer with the United States. Plaintiffs are reminded that any motion to amend their Complaint must comply with all applicable rules, including D.C.COLO.LCivR 15.1. In addition, any motion for jurisdictional discovery must articulate with specificity what discovery is sought, and from whom. If no such motion is filed, the court will direct the Clerk of Court to terminate this matter in accordance with the grant of Defendant's Motion to Dismiss.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) The Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) [Doc. 16] is **GRANTED**;

(2) Plaintiffs' claim is **DISMISSED without prejudice**; and

(3) No later than **May 31, 2022**, Plaintiffs may file a motion to amend the Complaint or a motion for jurisdictional discovery. However, if no such motion is filed, the court will direct the Clerk of Court to terminate this case accordingly.

DATED: April 29, 2022

BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge