### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO
### Judge Nina Y. Wang

Civil Action No. 21-cv-03053-NYW

RICKY T. GRAHAM, and
CONNIE L. ARCHULETA,

    Plaintiffs,

v.

THE UNITED STATES OF AMERICA,

    Defendant.

---

## ORDER ON MOTION FOR JURISDICTIONAL DISCOVERY

---

This matter is before the court on Plaintiffs' Motion for Jurisdictional Discovery (the "Motion" or "Motion for Jurisdictional Discovery") [Doc. 27] filed on May 31, 2022 by Plaintiffs Ricky T. Graham and Connie L. Archuleta.[1]  This court has reviewed the Motion, the related briefing, and the applicable case law, and concludes that oral argument would not materially assist in the resolution of this matter.  Being fully advised in the premises, the Motion for Jurisdictional Discovery is respectfully **GRANTED in part** and **DENIED in part**.

### BACKGROUND

This court has set forth the background of this case in a prior order, *see* [Doc. 24], and does so again here only as necessary for purposes of the instant Motion. Plaintiffs are siblings who claim title to mineral interests in real property situated in Adams County, Colorado (the "Property").

---

[1] Originally, this court fully presided over this matter pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes dated January 5, 2022. [Doc. 9].  On July 22, 2022, Judge Nina Y. Wang was sworn in as a United States District Judge and now presides over this case in this capacity.  *See* [Doc. 32].

[Doc. 1 at ¶¶ 2, 4, 31].  In 1902, the United States conveyed the Property to David McD. Graham ("David Graham I") via United States patent, "without mineral reservation." [*Id.* at ¶¶ 25-26; Doc. 1-5].  Plaintiffs are heirs of David Graham I and allege that after David Graham I's death and the passage of mineral interests through his heirs, they came into possession of mineral interests associated with the Property.  *See* [Doc. 1 at ¶¶ 30-35, 38-39, 45].  The United States, however, also claims an ownership interest in the subject mineral rights.  [*Id.* at ¶ 3].  Plaintiffs initiated this federal action on November 12, 2021 pursuant to the Quiet Title Act, 28 U.S.C. § 2409a *et seq.*, seeking a declaratory judgment that (1) David Graham I had "right, title, and interest" in the subject minerals at the time of his death; (2) the United States has no interest in the subject minerals; and (3) Plaintiffs "are the heirs and present owners of a [one-fourth] interest . . . of the minerals." [*Id.* at ¶ 47].

Defendant filed a Motion to Dismiss under Rule 12(b)(1), arguing that the court lacked subject matter jurisdiction over Plaintiffs' claim because this case was filed outside of the Quiet Title Act's twelve-year statute of limitations. [Doc. 16].[2]  Specifically, Defendant argued that Plaintiffs' predecessors in interest knew or should have known in 1943—based a deed recorded that year (the "1943 Deed")—that the United States had a claim to the subject mineral interests and thus, Plaintiffs' Quiet Title Act claim accrued at that time.  [*Id.* at 5-6].  This court granted the Motion to Dismiss on April 29, 2022 after concluding that under Colorado law, the 1943 Deed provided constructive notice to Plaintiffs' predecessors in interest of the United States' claim to the mineral interests.  [Doc. 24 at 15, 16].  However, the court granted Plaintiffs leave to file either a motion to amend their Complaint or a motion for jurisdictional discovery.  [*Id.* at 16-17].  The

---

[2] "Timeliness under [the Quiet Title Act] is a jurisdictional prerequisite to suit," and a federal court thus lacks jurisdiction over an untimely claim. *Knapp v. United States*, 636 F.2d 279, 282 (10th Cir. 1980).

court instructed Plaintiffs that they "must articulate with specificity what discovery is sought, and from whom." [*Id.* at 17].

Plaintiffs filed the instant Motion on May 31, 2022, seeking leave to conduct jurisdictional discovery "in connection with the arguments of the Plaintiffs as to their lack of actual or constructive notice of the Defendant's claim to the mineral rights." [Doc. 27 at 4]. Defendant opposes the Motion on the grounds that the jurisdictional discovery requested is overbroad and unlikely to affect the outcome of the case. [Doc. 30 at 3]. After Plaintiffs replied, *see* [Doc. 31], Defendant moved for leave to file a sur-reply, which Plaintiffs did not oppose. [Doc. 33 at 1]. The court granted Defendant's motion and deemed Defendant's Sur-reply filed as of July 29, 2022. *See* [Doc. 34; Doc. 35]. Because the matter is fully briefed, the court turns to the Parties' arguments below.

## LEGAL STANDARD

"When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002). Whether to allow jurisdictional discovery is within "the broad discretion" of the trial court. *Id.* The court abuses its discretion if the denial of limited discovery results in prejudice to a litigant. *Id.* "Prejudice is present where 'pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary.'" *Id.* (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977)). "[T]he burden of demonstrating a legal entitlement to jurisdictional discovery—and the related prejudice flowing from the discovery's denial—[is] on the party seeking the discovery." *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1190 n.11 (10th Cir. 2010). However, a court does not abuse its discretion in declining

3

to permit jurisdictional discovery if there is a "very low probability that the lack of discovery [would] affect[] the outcome of th[e] case." *Magpul Indus., Corp. v. Blue Force Gear, Inc.*, No. 14-cv-01470-RBJ, 2014 WL 6845851, at *2 (D. Colo. Dec. 4, 2014). "It is also not an abuse of discretion to deny a request for jurisdictional discovery if the request is based 'on little more than a hunch that it might yield jurisdictionally relevant facts.'" *Id.* (quoting *Breakthrough Mgmt. Grp.*, 629 F.3d at 1190).

## ANALYSIS

Plaintiffs seek leave to request and obtain the following jurisdictional discovery:

1. All documents, case numbers, and docket numbers regarding Defendant's initiation of an action "to purchase and acquire by condemnation the absolutely fee simple title" to 20,000 acres of land.

2. Bureau of Land Management's internal communications and documents pertaining to the subject property.

3. Real Estate Division of the United States Army Corps of Engineers internal communications and documents pertaining to the subject property.

4. Documents relating to mineral audits, mineral deeds or any other documentary information pertaining to the subject property from Union Pacific Railroad Company in Omaha, NE.

5. Documents and internal communications from Branch of Lands of Realty.

6. Fish and Wildlife Service Mountain-Prairie Region, internal communications and documents pertaining to the subject property.

7. Documents and internal communications from the Office of the Attorney General, Washington, D.C.

[Doc. 31 at 4].[3]  Plaintiffs argue that these requests are narrow and that through this discovery, they "will develop specific, factually supported, lines of inquiry so as to evaluate the facts,

---

[3] In the Motion for Jurisdictional Discovery, Plaintiffs set forth a 15-item request for jurisdictional discovery. [Doc. 27 at 4].  But in their Reply, Plaintiffs state that if the court grants their Motion, they "would propose the following revised and more limited jurisdictional discovery in connection

4

intentions, and knowledge of the parties and their predecessors in interest underpinning the mutual intention and understanding of the severance of the minerals from surface estate." [Doc. 27 at 3]. Furthermore, Plaintiffs state that "[i]n light of the meaningful benefit to [Plaintiffs] in establishing of a record in developing a specific, and factually supported, line of inquiry as identified herein, as well as the need to resolve significant factual disagreements between Plaintiffs and the Defendant, jurisdictional discovery is likely to produce evidence of facts establishing subject matter jurisdiction." [*Id.* at 4-5].

In response, Defendant argues that Plaintiffs' requested jurisdictional discovery is overbroad. [Doc. 30 at 3]. Defendant maintains that the narrow question before the court is not whether the mineral rights were severed from the Property or whether Plaintiffs' predecessors in interests reserved their rights to the minerals, but is instead only whether Plaintiffs' predecessors in interest would have been on notice, based on the 1943 Deed, of the United States' claim to the mineral rights. [*Id.* at 4]. According to the United States, "the only facts that could possibly be relevant to the Court's jurisdiction over this case are those that might serve to rebut the presumption that the 1943 Deed provided Plaintiffs' putative predecessors-in-interest with constructive notice of the government's claim," and any jurisdictional discovery permitted "must be limited to evidence that could show that the 1943 Deed would not have put a reasonable person . . . on notice that the government claimed an interest in the mineral rights at issue." [*Id.* (emphasis omitted)].

---

with the arguments of the Plaintiffs pertaining to notice of Defendant's claim to the mineral rights." [Doc. 31 at 4]. Because Plaintiffs appear to abandon some of their proposed discovery requests, and because Defendant was permitted the opportunity to respond to this more limited list of proposed discovery, *see* [Doc. 35], the court considers only these revised discovery requests in this Order.

Plaintiffs develop their argument more on Reply. *See* [Doc. 31]. Plaintiffs assert that "additional jurisdictional discovery is needed in order to challenge Defendant's theory that the 1943 Deed did [give] or should have given notice of the United State[s'] purported claims to the mineral rights that are the subject of the dispute between the Parties." [*Id.* at 2]. Specifically, Plaintiff state that their pre-litigation investigation yielded a tract register from the Office of the Chief of Engineer, dated 1949, that included a notation that the mineral rights associated with the Property had been reserved by David Graham I. [*Id.* (citing [Doc. 31-1])].[4] Plaintiffs state that the official who placed this note in the government record "must have reviewed documentation to conclude [David Graham I's] reservation of mineral rights" and assert that the Office of the Chief of Engineer must have documents addressing "this issue." [*Id.* at 3]. Plaintiffs argue that precluding them from engaging in jurisdictional discovery to discover those documents would prejudice them. [*Id.*]. Defendant challenges this argument in its Sur-reply, asserting that the internal tract register "itself identifies the documentation that is the basis for the notation at issue": a final opinion from the Department of Justice, which is located in the case record at [Doc. 20-3]. *See* [Doc. 35 at 2]. Defendant maintains that the final opinion "merely states that the title to the [Property] is 'subject to water and mining rights'" and that this internal document would not have changed the fact that Plaintiffs' predecessors in interest were on notice of the United States' claim to the mineral interests. [*Id.*]; *see also* [Doc. 20-3 at 1].

Plaintiffs' requests for jurisdictional discovery can be divided into three categories: (1) internal government communications and documents, [*id.* at 4, ¶¶ 2-3, 5-7]; (2) documents and other materials related to Defendant's 1942 purchase of a tract of 20,000 acres of land, which

---

[4] The tract register was part of the record before the court in ruling on the Motion to Dismiss. *See* [Doc. 22-4; Doc. 24 at 13-15].

includes the Property, [*id.* at ¶ 1], and (3) internal documents or communications from a non-governmental non-party.  [*Id.* at ¶ 4].  The court addresses each of these categories of requests in turn.

***Internal Government Documents***.  First, Plaintiffs request leave to take jurisdictional discovery to obtain internal government documents and communications—namely, "internal communications and documents pertaining to the [Property]" from the United States Bureau of Land Management, the Real Estate Division of the United States Army Corps of Engineers, the "Branch of Lands of Realty,"[5] and the United States Fish and Wildlife Service, [*id.* at ¶¶ 2-3, 5-6], as well as "[d]ocuments and internal communications" from the United States Attorney General's Office.  [*Id.* at ¶ 7].

As a preliminary matter, the court agrees with Defendant that Plaintiffs' discovery requests, which are not limited in time, are overbroad.  The Parties agree that the narrow jurisdictional issue in this case is whether the 1943 Deed did or should have put Plaintiffs' predecessors in interest on notice of the government's claim to the mineral interests.  [Doc. 30 at 3; Doc. 31 at 1].  But Plaintiffs do not explain why *all* documents or communications "pertaining to" the Property in the possession of these governmental agencies—even those documents dated after the Quiet Title Act's twelve-year statute of limitations would have run, *see* 28 U.S.C. § 2409a(g), are relevant to the narrow jurisdictional question before the court.  *See* [Doc. 27; Doc. 31].  Moreover, beyond

---

[5] Through the court's independent research, the court could locate no governmental agency or branch called the "Branch of Lands of Realty."  The United States Bureau of Land Management operates a "Colorado Lands and Realty" Program.  *See Colorado Lands and Realty*, U.S. Dep't of the Interior, Bureau of Land Mgmt., https://www.blm.gov/programs/lands-and-realty/regional-information/colorado.  Absent any other identifying or explanatory information from Plaintiffs, the court assumes that Plaintiffs seek documents from this Program.  The court simply notes, however, that the exact source from which Plaintiffs seek discovery is not determinative of the question before the court.

raising arguments in their Reply concerning the Army Corps of Engineers, Plaintiffs do not make specific, detailed arguments as to why each of these government agencies might possess documents relevant to the jurisdictional inquiry. *See* [Doc. 27; Doc. 31]. In other words, Plaintiffs "raise[] no allegations of facts or evidence that [they] believe[] [their] wide-reaching discovery request[s] would reveal" as to the Bureau of Land Management, the Colorado Lands and Realty Program, or the Fish and Wildlife Service. *Lystn, LLC v. F.D.A.*, No. 19-cv-01943-PAB-KLM, 2020 WL 5513409, at *9 (D. Colo. Sept. 14, 2020), *aff'd*, No. 20-1369, 2021 WL 4006184 (10th Cir. Sept. 3, 2021); *see also First Magnus Fin. Corp. v. Star Equity Funding, L.L.C.*, No. 06-2426-JWL, 2007 WL 635312, at *10 (D. Kan. Feb. 27, 2007) (denying jurisdictional discovery where the movant failed to explain the facts that it believed jurisdictional discovery would yield). Instead, Plaintiffs state simply that discovery will help Plaintiffs "develop specific, factually supported, lines of inquiry so as to evaluate the facts, intentions, and knowledge of the parties and their predecessors in interest underpinning the mutual intention and understanding of the severance of the minerals from [the] surface estate." [Doc. 27 at 3]. This vague, unspecific assertion of what the proposed discovery would reveal is insufficient to demonstrate a legal entitlement to jurisdictional discovery. *See Geico Gen. Ins. Co. v. M.O.*, No. 21-2164-DDC-ADM, 2021 WL 4892918, at *11 (D. Kan. Oct. 20, 2021) ("[V]ague contentions" are insufficient to "justify jurisdictional discovery.").

In addition, Plaintiffs argue that their requested jurisdictional discovery may reveal relevant evidence because they believe the Property's chain of title is incomplete and that it is Plaintiffs' position "that the 1943 Deed does not expressly reserve the mineral rights because [the Tiedemans, the Property owners before the United States] never possessed ownership of such mineral rights in the first place." [Doc. 31 at 2, 3]. In support of this assertion, they state that

"throughout the chain of title available, certain other rights such as water rights and agricultural rights were expressly mentioned, yet mineral rights were only expressly discussed in the documents Plaintiffs were able to locate directly concerning [David Graham I]'s interests," [*Id.* at 2-3]. However, there still remains a missing link between the requested discovery and the narrow jurisdictional question before the court. This court has previously concluded that internal government documents suggesting a reservation of mineral rights by David Graham I would not necessarily be relevant to the question of whether Plaintiffs' predecessors in interest were on notice of the United States' claim to the mineral interests:

> [T]he court is unpersuaded by Plaintiffs' suggestion that . . . the tract register[] demonstrate[s] that a severance of the mineral rights occurred at some time prior to 1943. . . . The question before the court is not whether the United States believed that David Graham I held a reservation of mineral rights, or even whether such a severance or reservation of rights occurred; rather, the limited question before the court is whether Plaintiffs' predecessors in interest should have known—based on the 1943 Deed—of the United States' claim to the subject minerals, such that the statute of limitations on Plaintiffs' claim began to run upon the recording of the Deed. . . . Plaintiffs do not suggest that these documents—which appear to be internal documents—were a matter of public record, that Plaintiffs' predecessors in interest knew of these documents, or that their predecessors in interest otherwise knew of the United States' apparent position on the mineral rights, such that these documents would alter the analysis as to whether a reasonable person in Plaintiffs' predecessors' position should have known of the United States' claim. . . . Accordingly, the court cannot conclude that these documents are relevant to the court's present inquiry.

[Doc. 24 at 14-15]. While Plaintiffs' proposed discovery requests may yield evidence that is relevant to the merits of Plaintiffs' claims at large, Plaintiffs have not explained how internal government documents would impact the constructive notice of the United States' claim that this court has concluded was provided by the 1943 Deed. *See* [Doc. 27; Doc. 31]; *see also Cheyenne Arapaho Tribes of Okla. v. United States*, 558 F.3d 592, 596-97 (D.C. Cir. 2009) (affirming denial of jurisdictional discovery where "[t]he Tribes failed to specify how the requested discovery would

9

alter the court's determination that the statute of limitations had long since run and extinguished their claim.").

Indeed, despite Defendant's argument that "documents of which Plaintiffs' putative predecessors-in-interest were unaware—i.e., documents internal to a government agency—are irrelevant to whether the 1943 Deed would have put a reasonable person in their position on notice of the government's claim," *see* [Doc. 30 at 5], Plaintiffs do not respond to this argument in their Reply or otherwise connect the internal government documents or communications to the limited jurisdictional question. *See generally* [Doc. 31]. While there may be *some* possibility that Plaintiffs' predecessors in interest could have somehow had knowledge of internal government documents, or *some* possibility the internal government documents could assist in the discovery of public documents bearing on the issue of notice, Plaintiffs do not make any such argument. *See* [*id.*]. The court declines permit jurisdictional discovery based on such a remote possibility, absent any developed argument from Plaintiffs. "A hunch (or a hope) . . . is insufficient to warrant potentially extensive and expensive document production." *Magpul Indus.*, 2014 WL 6845851, at *3; *see also Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that the court has no obligation to make arguments or perform research on behalf of litigants).

Finally, insofar as Plaintiffs seek "[d]ocuments"—not limited to internal documents—from the United States Attorney General's Office, *see* [Doc. 31 at 4, ¶ 7], Plaintiffs do not explain the nature or subject matter of the documents sought, nor is the request limited by time, department, author, or by any other measure that could narrow such a broad request or otherwise permit the court to determine whether the requested documents would be relevant to the jurisdictional issue of notice. To establish a legal entitlement to jurisdictional discovery, Plaintiffs "must provide the Court with an indication of the type of information and discovery [they think they] may need to

10

combat the dismissal." *Onyx Enters. Int'l Corp. v. Sloan Int'l Holdings Corp.*, No. 19-cv-02992-DDD-KLM, 2020 WL 1958414, at *3 (D. Colo. Mar. 26, 2020), *report and recommendation adopted*, 2020 WL 1955398 (D. Colo. Apr. 23, 2020). Because this request does not do so, and is not tailored to the specific jurisdictional issue, it is overbroad. *See Wilkinson v. Maese*, No. 1:20-cv-783 MIS/KRS, 2021 WL 5177529, at *3 (D.N.M. Nov. 8, 2021) (limiting jurisdictional discovery where the requests were "overly broad as they [were] not tailored to the issue" before the court); *Ensign United States Drilling, Inc. v. B & H Rig & Tong Sales*, No. 13-cv-00724-LTB, 2013 WL 3233614, at *4 (D. Colo. June 26, 2013) (declining to permit jurisdictional discovery where the requested discovery "constitute[d] a classic fishing expedition that is not sufficiently tailored to lead to the discovery [if] evidence relevant to the narrow issue here"). Because Plaintiffs do not explain why they believe the Attorney General's Office would have relevant documents—or identify the documents sought, as ordered by the court—the court declines to *sua sponte* attempt to narrow Plaintiffs' request and will instead decline to permit this requested jurisdictional discovery. *Cagle v. Rexon Indus. Corp.*, No. CIV-18-1209-R, 2019 WL 1960360, at *10 (W.D. Okla. May 2, 2019) ("Plaintiff's request for jurisdictional discovery is too broad and imprecise, and Plaintiff fails to adequately show the Court why discovery would enable him to respond to the issues Defendant raises in its motion. . . . . Accordingly, as Plaintiff has failed to make a sufficient showing that jurisdictional discovery is needed, the Court denies his request.").

***Documents Relating to the Property Purchase***. Next, Plaintiffs seek leave to obtain "[a]ll documents, case numbers, and docket numbers regarding Defendant's initiation of an action 'to purchase and acquire by condemnation the absolute[] fee simply title' to 20,000 acres of land." [Doc. 31 at 4, ¶ 1]. The court understands Plaintiffs to be referencing a notice of lis pendens,

recorded in August 1942 by the United States, on the Property and the surrounding acres. *See* [Doc. 16-1 at 29]. The notice states that

> Notice is hereby given that the United States of America, as Petitioner has begun an action in the District Court of the United States of America, for the District of Colorado to purchase and acquire by condemnation the absolute fee simple title to the lands located in the County of Adams, State of Colorado, more particularly described in Schedule A, attached hereto and made a part hereof by reference, subject, however, to existing easements for public roads and highways, for public utilities for Railroads and for pipe lines, for the use of the United States of America and its War Department in connection with the establishment of the Denver Arsenal.

[*Id.*]. Plaintiffs do not expressly articulate the need for this specific discovery in either their Motion or their Reply. [Doc. 27; Doc. 31].

To be sure, the court acknowledges the possibility that some documents filed in the condemnation action(s) could potentially provide additional insight as to whether the 1943 Deed was sufficient to give notice of Defendant's claim to the mineral interests. However, court filings, case numbers, and docket numbers are generally a matter of public record, which weighs against permitting this jurisdictional discovery. "Typically, courts do not order discovery of public records which are equally accessible to all parties." *Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 242 F.R.D. 1, 11 (D.D.C. 2007). Despite the fact that the United States argues in its Response that Plaintiffs' request seeks publicly available documents and is thus improper, *see* [Doc. 30 at 7], Plaintiffs do not state in their Reply that they cannot access these documents through public means or that the documents are not equally accessible to all Parties, nor do they explain why these documents are appropriately attainable through discovery.[6] Accordingly, Plaintiffs have not met

---

[6] To the extent Plaintiffs' request for "[d]ocuments" could be interpreted to seek documents not publicly available, for the reasons explained above, Plaintiffs have not met their burden of demonstrating why internal government documents would be relevant to the jurisdictional inquiry.

their burden of demonstrating that they are legally entitled to this requested jurisdictional discovery. *Breakthrough Mgmt. Grp.*, 629 F.3d at 1190 n.11.

However, the court has broad discretion to grant jurisdictional discovery, *Sizova*, 282 F.3d at 1326, and acknowledges that the exact case number(s) associated with any condemnation action(s) may be difficult for Plaintiffs to determine, given the length of time that has passed since the sale of the Property, and concludes that it is more likely than not that this information is more readily available to the United States, a party to the action(s). Accordingly, the court will *sua sponte* grant Plaintiffs leave to conduct <u>limited</u> jurisdictional discovery, and only insofar as Plaintiffs seek the <u>case numbers</u> associated with the condemnation action(s) related to the sale of the Property. *See 25 CP, LLC v. Firstenberg Mach. Co.*, No. 09-cv-80-PB, 2009 WL 4884483, at *10 n.14 (D.N.H. Dec. 8, 2009) (court has authority to order jurisdictional discovery *sua sponte*); *Luster v. JRE Fin., LLC*, No. 3:21-cv-00698-MAB, 2022 WL 255408, at *7 (S.D. Ill. Jan. 27, 2022) (*sua sponte* ordering jurisdictional discovery). Plaintiffs shall serve this discovery on Defendant no later than **August 31, 2022**.

***Non-Party Documents***. Finally, Plaintiffs seek leave to obtain the following discovery from a non-government, non-party source, seeking "[d]ocuments relating to mineral audits, mineral deeds or any other documentary information pertaining to the [Property] from Union Pacific Railroad Company in Omaha, NE." [Doc. 31 at 4, ¶ 4]. Plaintiff represents that the Union Pacific Railroad Company ("Union Pacific") is "a private entity with a mineral interest that indicated it may have documents that may be relevant to this matter but refused to produce the same." [Doc. 27 at 4, ¶ 7]. The United States does not take a position on this request. [Doc. 30 at 4 n.1].

13

Although Plaintiffs do inform the court of the specific documents sought in this request—documents relating to mineral audits or mineral deeds pertaining to the Property—Plaintiffs do not identify the specific evidence that they believe this jurisdictional discovery would reveal. *Lystn*, 2020 WL 5513409, at *9. Moreover, the bare assertion that Union Pacific "*may* have documents that *may* be relevant to this matter" runs dangerously close to a request based on nothing more than "a hunch that [discovery] might yield jurisdictionally relevant facts." *Magpul Indus.*, 2014 WL 6845851, at *2. However, the court understands that Plaintiffs are likely limited in their ability to procure the desired information from a non-party absent a subpoena. And while Plaintiffs do not expressly identify the facts or evidence that they believe the discovery will reveal, the court can nevertheless ascertain from the briefing that Plaintiffs believe that Union Pacific may have information in its possession concerning a potential reservation of the mineral interests in the Property by David Graham I. *See* [Doc. 27 at 4, ¶¶ 7, 10].

Accordingly, in its broad discretion, the court will **GRANT** the Motion for Jurisdictional Discovery **in part**, but only insofar as Plaintiffs seek "[d]ocuments relating to mineral audits, mineral deeds or any other documentary information pertaining to the [Property] from Union Pacific Railroad Company in Omaha, NE." *See* [*id.* at 4, ¶ 7]. In all other respects, the Motion for Jurisdictional Discovery is **DENIED**.

Plaintiffs shall serve jurisdictional discovery on Union Pacific no later than **August 31, 2022**. In addition, on or before **October 31, 2022**, Plaintiffs may file a motion to amend their Complaint with any information obtained through this jurisdictional discovery. If a motion to amend is not filed by this date, absent further order of the court, this case will be dismissed without prejudice for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Plaintiffs' Motion for Jurisdictional Discovery [Doc. 27] is **GRANTED in part** and **DENIED in part**;

(2) On or before **August 31, 2022**, Plaintiffs shall serve the permitted jurisdictional discovery on Defendant and Union Pacific;

(3) On or before **October 31, 2022**, Plaintiffs may file a motion to amend their Complaint with any information obtained through the permitted jurisdictional discovery; and

(4) If a motion to amend is not filed on or before **October 31, 2022**, absent further order of the court, this case will be dismissed without prejudice for lack of subject matter jurisdiction.

DATED:  August 9, 2022                         BY THE COURT:

_Nina Y. Wang_
Nina Y. Wang
United States District Judge