**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-03053-NYW

RICKY T. GRAHAM, and
CONNIE L. ARCHULETA,

      Plaintiffs,

v.

THE UNITED STATES OF AMERICA,

      Defendant.

---

### MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Defendant's Motion for Summary Judgment, [Doc. 68], and the Motion to Postpone Ruling on Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(d) (the "Motion to Postpone Ruling"), [Doc. 74]. The Court has reviewed the Motions and the related briefing, the applicable case law, and the record before the Court, and concludes that oral argument will not materially assist in the resolution of the Motions. For the following reasons, the Motion to Postpone Ruling is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**.

### BACKGROUND

The Court assumes the Parties' familiarity with the factual and procedural posture of this case and repeats it here only as necessary. Plaintiffs Ricky T. Graham and Connie L. Archuleta (collectively, "Plaintiffs") are siblings who claim title to mineral interests in real property situated in Adams County, Colorado (the "Property"). [Doc. 60 at ¶¶ 2, 24]. In 1902, the United States conveyed the Property to David McD. Graham, Plaintiffs' great-

grandfather, and the Property subsequently passed through several owners.  [*Id.* at ¶¶ 2, 17]; *see also* [Doc. 68-2 at 10–28].

The United States (or "Defendant") also claims an ownership interest in the subject mineral rights based on the conveyance of the Property to the United States by the then-owners, which was recorded by deed in 1943 (the "1943 Deed").  [Doc. 60 at ¶¶ 3, 19]. Plaintiffs allege that they first became aware of the United States's claim to the mineral rights on December 6, 2018 via a letter sent by the United States Bureau of Land Management to Ms. Archuleta.  [*Id.* at ¶ 35].

Plaintiffs initiated this federal action on November 12, 2021 pursuant to the Quiet Title Act, 28 U.S.C. § 2409a, seeking to quiet title to the mineral interests.  [Doc. 1 at ¶¶ 42–47].  The United States moved to dismiss Plaintiffs' claim on the basis that it was barred by the Quiet Title Act's twelve-year statute of limitations.  *See* [Doc. 16].  This Court granted the Motion to Dismiss upon concluding that the allegations in the Complaint were insufficient to plausibly establish that Plaintiffs' claim had accrued in 2018, as Plaintiffs suggested; rather, the Court concluded, the allegations and evidentiary materials established that the claim had accrued in 1943 upon the recordation of the 1943 Deed, and for this reason, Plaintiffs' claim was untimely.  [Doc. 24 at 15–16].  However, the Court granted Plaintiffs leave to file either a motion to amend the complaint or a motion for jurisdictional discovery.  [*Id.* at 17].  Plaintiffs subsequently filed a Motion for Jurisdictional Discovery, [Doc. 27], which this Court granted in part, *see* [Doc. 36].  After taking the permitted limited jurisdictional discovery, Plaintiffs amended their pleading, *see* [Doc. 60], and the Court held a Scheduling Conference at which it was decided that the Parties would be granted leave to file early motions for summary judgment, *see* [Doc. 66].

On July 7, 2023, Defendant filed its Motion for Summary Judgment, seeking judgment in its favor on Plaintiffs' claim on untimeliness grounds. [Doc. 68]. And on August 28, 2023, alongside their Response to the Motion for Summary Judgment, Plaintiffs filed their Motion to Postpone Ruling, requesting that the Court postpone ruling on the Motion for Summary Judgment and permit Plaintiffs additional time for discovery. [Doc. 74]. Both Motions are fully briefed and ripe for disposition. Because it concerns a threshold issue about the Court's ability to rule on the Motion for Summary Judgment, the Court turns first to Plaintiffs' Motion to Postpone Ruling and then analyzes the Motion for Summary Judgment.

## I.      Motion to Postpone Ruling

### A.      Legal Standard

Rule 56(d) provides that if a party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to a motion for summary judgment, the Court may (1) defer consideration of or deny the summary judgment motion; (2) allow time for further discovery; or (3) issue any other appropriate order. Fed. R. Civ. P. 56(d)(1)–(3). "The policy behind Rule 56(d) is to safeguard against an 'immature or improvident grant of summary judgment where the non-moving party has not had the opportunity to discover information that is essential to its opposition.'" *Wagner Equip. Co. v. Wood*, No. 11-cv-00466-MV-ACT, 2012 WL 988022, at *5 (D.N.M. Mar. 20, 2012) (alteration marks omitted) (quoting *Gulfstream Worldwide Realty, Inc. v. Philips Elecs. N.A. Corp.*, No. 06-cv-01165-JB-DJS, 2007 WL 5685127, at *7 (D.N.M. Oct. 19, 2007)).

To that end, a party seeking to postpone a ruling on a summary judgment motion must "state with specificity how the additional material will rebut the summary judgment motion." *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000). In the Tenth Circuit, a party requesting that the Court postpone a summary judgment ruling for further discovery "must specify in the affidavit (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment." *Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 968 (10th Cir. 2021) (quotation omitted). Rule 56(d) motions must be "robust," *id.* (quotation omitted), and the accompanying affidavits must be specific, *see Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1206 (10th Cir. 2015) ("[W]e have observed that an affidavit's lack of specificity counsels against a finding that the district court abused its discretion in denying a request for additional discovery under the rule." (quotation omitted and alteration changed)). Importantly, the Court "may not look beyond the affidavit in considering a Rule 56(d) request." *Adams*, 30 F.4th at 968 (quoting *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017)).

## B.    Analysis

Plaintiffs ask the Court to postpone ruling on the Motion for Summary Judgment to permit them additional time to locate potentially relevant documents to this case. [Doc. 74 at ¶ 3]. Their argument primarily revolves around a memorandum or letter dated April 27, 1978, with the subject line "Mineral Leasing on Acquired Land of the United States Set Apart for Military or Naval Purposes (Rocky Mountain Arsenal, Colorado)" (the "1978 Letter"), which Plaintiffs state "establish[es] David McD Graham's reservation and

ownership of the subject minerals." [*Id.* at ¶¶ 9, 12]; *see also* [Doc. 74-1 (the 1978 Letter)].

The 1978 Letter states, in pertinent part:

> It is further explained that this data is researched from documents available in the audit files. No abstracts or certificates of title are available on this installation at this time. The final opinions and deeds or condemnation proceedings were examined. A tract register prepared at the time of final audit, apparently with the use of the abstracts and certificates of title lists these mineral reservations:
>
> a. Request No. C-25386
> E½NW¼, Section 23
> Minerals reserved to David McDGraham [sic]

[Doc. 74-1 at 2].

In Plaintiffs' counsel's affidavit, he represents that Plaintiffs requested the documents referenced in the 1978 Letter through discovery propounded onto the United States, but that the United States responded that it could not locate any "Request C-28368 [sic]" and was not aware of any applicable abstracts or certificates of title. [Doc. 74-3 at ¶¶ 4–5].[1] Counsel asserts that the production of these documents "would shed light on the underlying issues as to mineral ownership" and "as to the pending Motion for Summary Judgment[,] when the Statute of Limitations would begin to accrue." [*Id.* at ¶ 7].

---

[1] Plaintiffs' counsel's affidavit states that the United States responded that it could not locate "Request C-28368." [Doc. 74-3 at ¶ 5 (emphasis added)]. However, the Court notes that in the email submitted by Plaintiffs, counsel for the United States represented that Defendant had "not been able to locate any 'Request C-25368.'" [Doc. 74-2 at 1 (emphasis added)]. Plaintiffs have not provided the Court with a copy of their original discovery request propounded on the United States, but the Court notes that, in the United States's email, defense counsel stated that Plaintiffs' counsel had "asked for the following: . . . Request #C-25386," [*id.*], i.e., the record before the Court suggests that Plaintiffs' original request relayed the correct Request number as referenced in the 1978 Letter. Plaintiffs do not address any discrepancy in the various Request numbers or argue that the United States looked for the wrong Request number, and thus the Court assumes that the United States's email response simply contains a typographical error. In any event, for the reasons set forth in this Order, Plaintiffs have not demonstrated that they are entitled to Rule 56(d) relief.

He continues, "if the minerals at issue were severed from the surface as Plaintiff[s] believe[], the 1943 Deed would provide no notice, constructive or otherwise, as to the ownership of severed mineral interests as a Grantor of a Deed conveys only the interest they possess," and "[a]ny minerals severed before 1943 would not be mentioned in that 1943 Deed as those minerals were not property interests the Tiedeman Grantor could convey to the United States."  [*Id.* at ¶ 8].  Counsel asserts that there is a "plausible basis that the documents at issue exist, [but] they just have not been located."  [*Id.* at ¶ 9].

Defendant opposes Plaintiffs' Motion.  *See* [Doc. 78].  It argues that even if the requested documents "could shed light on whether and when the Minerals were ever severed from the surface estate," this would not "change the conclusion that the 1943 Deed put Plaintiffs' predecessors on notice of the [United States's] claim" to the Property's mineral rights.  [*Id.* at 4–5].  Furthermore, it contends that Plaintiffs have failed to meet their burden to show that additional time will enable Plaintiffs to obtain the referenced documents.  [*Id.* at 6].  Defendant represents that it has already conducted "several exhaustive searches" for relevant documents, including (1) the Army Corps of Engineers's production of 211 documents in response to Plaintiffs' four FOIA requests; (2) the United States Fish and Wildlife Service's production of 153 documents in response to Plaintiffs' two FOIA requests; (3) the United States Bureau of Land Management's production of 286 pages of documents in response to Plaintiff's FOIA request; and (4) searches pursuant to informal discovery requests propounded by Plaintiffs in August 2022 and June 2023.  [*Id.* at 6–7 & n.2].  The United States contends that the fact that the subject documents have not been located in such exhaustive searching means "they cannot be found in any location where the United States is likely to have filed them."  [*Id.* at 8].  And

finally, it argues that formal discovery is not likely to uncover those documents because Rule 34 requires only a *reasonable* search for documents, and any further efforts to locate the documents would not be proportional to the needs of the case under Rule 26.  [*Id.* at 8–9].

The Court respectfully concludes that Plaintiffs have not met their burden to demonstrate that relief under Rule 56(d) is warranted.  As a preliminary matter, the affidavit does not identify with sufficient specificity the "probable facts" that Plaintiffs believe additional discovery will yield.  *Adams*, 30 F.4th at 968.  The affidavit states that the missing documents, if located, "would shed light" on ownership of the mineral rights or "when the Statute of Limitations would begin to accrue," *see* [Doc. 74-3 at ¶ 7], but these generalized assertions do not amount to "probable facts" that would defeat summary judgment.  *Cf. State Auto Ins. Cos. v. Christensen*, No. 2:19-cv-00751-DBB-PMW, 2020 WL 1676718, at *2 (D. Utah Apr. 6, 2020) ("Defendants' affidavit does not meet the required standard because it does not identify the probable facts, contains only a list of evidence Defendants wish to investigate, and does not provide a basis for relief."). While the Court acknowledges it may be difficult to pin down specific probable facts these three categories of documents would reveal, "Rule 56[(d)] is not a license for a fishing expedition," *Lewis v. City of Ft. Collins*, 903 F.2d 752, 759 (10th Cir. 1990), and it requires more than broad, speculative suggestions of what Plaintiffs might uncover with additional discovery, *see Adams*, 30 F.4th at 970 (explaining that mere speculation that additional discovery would yield useful evidence is insufficient); *see also Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533, 537 (10th Cir. 1987) ("[S]ummary judgment need not be denied

merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint." (quotation omitted)).

The Court also cannot conclude that Plaintiffs have adequately explained why additional time will enable them to obtain relevant facts and rebut the Motion for Summary Judgment. *See Adams*, 30 F.4th at 968. Notably, Plaintiffs acknowledge that they have already requested the subject documents from the United States and that the United States responded that it searched for, but could not locate, those documents. *See* [Doc. 74-3 at ¶¶ 4–5]; *see also* [Doc. 74 at ¶ 8 (Plaintiffs referencing their "access to countless documents provided by Defendant")]. Moreover, this Court permitted Plaintiffs to take limited jurisdictional discovery, *see* [Doc. 36], and the United States represents that Plaintiffs have submitted numerous FOIA requests to various federal agencies and have received hundreds of documents in response, [Doc. 78 at 6–7]; *see also* [Doc. 78-1 at 3–10; Doc. 78-2 at ¶ 6; Doc. 78-3 at ¶¶ 11, 19–20]. But counsel's affidavit does not explain why Plaintiffs believe any additional time for discovery would uncover the documents referenced in the 1978 Letter—the affidavit does not identify any particular government agency Plaintiffs believe has possession of these documents or could locate these documents, nor does it explain what specific further efforts Plaintiffs believe Defendant must or could take to locate the documents. *See generally* [Doc. 74-3]. Instead, the affidavit simply states that there is a "plausible basis that the documents at issue exist, [but] they just have not been located." [*Id.* at ¶ 9].

But again, Rule 56(d) does not permit fishing expeditions, *Lewis*, 903 F.2d at 759, and the "general principle of Rule 56([d]) is that summary judgment should be refused where the nonmoving party *has not had the opportunity* to discover information that is

essential to his opposition," *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (cleaned up and emphasis added)).  Although their efforts were unsuccessful, Plaintiffs have already requested, and the United States has already searched for, the documents referenced in the 1978 Letter.  Simply suggesting that the United States must look again, but harder this time, is not sufficient to meet Plaintiffs' burden under Rule 56. *See Adams*, 30 F.4th at 970; *cf. Davis v. U.S. Dep't of Veterans Affs.*, No. 16-cv-00701-CBS, 2017 WL 3608192, at *8–9 (D. Colo. Aug. 22, 2017) ("The relevance and proportionality requirements in Rule 26(b)(1) do not permit a requesting party 'to engage in a fishing expedition in the hopes that he may turn up some relevant or useful information.'" (quoting *King v. Biter*, No. 1:15-cv-00414-LJO-SAB, 2017 WL 3149592, at *6 (E.D. Cal. July 25, 2017))), *aff'd*, 730 F. App'x 571 (10th Cir. 2018).  Moreover, on this record, and without evidence establishing that documents referenced in the 1978 Letter still exist, the Court cannot compel the United States to produce what it says does not exist.  *See Smith v. Pizza Hut, Inc.*, No. 09-cv-01632-CMA-BNB, 2013 WL 1751850, at *3 (D. Colo. Apr. 23, 2013); *see also* [Doc. 78-3].

For these reasons, the Court finds that Plaintiffs have not met their burden of demonstrating that this Court should postpone ruling on the Motion for Summary Judgment and permit additional discovery.  Accordingly, the Motion to Postpone Ruling is respectfully **DENIED**.

## II.    Motion for Summary Judgment

### A.    Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (citation and quotations omitted).

"Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations" in the complaint, "but must respond with specific facts showing the existence of a genuine factual issue to be tried."  *Sender v. Mann*, 423 F. Supp. 2d 1155, 1162 (D. Colo. 2006).  When considering the evidence in the record, the Court cannot and does not weigh the evidence, *see Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008), but construes the factual record and reasonable inferences therefrom in the light most favorable to the non-moving party, *Allen v. Muskogee*, 119 F.3d 837, 839–40 (10th Cir. 1997).  To avoid summary judgment, the non-moving party's evidence must be based on more than speculation, conjecture, or surmise.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

### B.    Undisputed Material Facts

The below material facts are drawn from the record before the Court and are undisputed unless otherwise noted.

1.    In 1902, the United States conveyed the Property to David McD. Graham via United States patent.  [Doc. 68 at ¶ 1; Doc. 73 at ¶ 1; Doc. 68-1 at 2; Doc. 68-2 at 8].

2.    At the time of David McD. Graham's death, he was the owner of the Property's surface and mineral estates, subject to a mortgage and a notice of lis pendens.

[Doc. 73 at ¶ 7; Doc. 75 at ¶ 7; Doc. 17-2 (the mortgage); Doc. 17-3 (the notice of lis pendens); Doc. 16-1 at 11].[2]

3.      The Property subsequently passed through several owners, and in 1929, the Property was conveyed to Ernest L. Tiedeman and Myra F. Tiedeman (the "Tiedemans"). [Doc. 68 at ¶¶ 2–3; Doc. 73 at ¶ 1; Doc. 68-2 at 10–28].

4.      The Tiedemans conveyed the Property back to the United States through a deed dated October 8, 1942, and recorded January 26, 1943 (the "1943 Deed"). [Doc. 68 at ¶¶ 4–5; Doc. 73 at ¶ 1; Doc. 68-3 at 2].

5.      The 1943 Deed states that the Tiedemans:

do grant, bargain, sell, convey and confirm, unto the United States of America and its assigns forever, all the following described lots or parcels of land, situate, lying and being in the County of Adams and State of Colorado, to-wit:

[The Property], together with 40 acre water right from the Northern Colorado Irrigation Company, with all lateral and pipe line right of way and ditch appurtaining [sic], being same water right as conveyed in Book 95, Page 142.

[Doc. 68 at ¶ 7; Doc. 73 at ¶ 1; Doc. 68-3 at 2].

6.      The 1943 Deed also provides that the Tiedemans, their heirs, executors, and administrators:

do covenant, grant, bargain and agree to and with the United States of America and its assigns, that at the time of the ensealing and delivery of these presents, they are well seized of the premises above conveyed, as of good, sure, perfect, absolute and indefeasible estate of inheritance, in law, in fee simple, and have good right, full power and lawful authority to grant, bargain, sell and convey the same in manner and form as aforesaid, and that the same are free and clear from all former and other grants, bargains,

---

[2] Plaintiffs do not cite evidence in support of this assertion, but the Parties agree this fact is undisputed. [Doc. 73 at ¶ 7; Doc. 75 at ¶ 7]. Evidence located elsewhere in the record supports the existence of the mortgage and notice of lis pendens.

sales, liens, taxes, assessments and encumbrances of whatever kind or nature soever.

[Doc. 68 at ¶ 8; Doc. 73 at ¶ 1; Doc. 68-3 at 2].

7.      The 1943 Deed does not contain any express reservation of mineral rights, does not expressly except from its conveyance any previous conveyance of mineral rights, and does not expressly limit the conveyance to the Property's surface estate.  [Doc. 68 at ¶¶ 9–11; Doc. 73 at ¶¶ 1–2[3]]; *see generally* [Doc. 68-3 at 2].

8.      The available recorded Property deeds do not demonstrate that the mineral rights were ever severed from the Property's surface estate.  [Doc. 68 at ¶ 12; Doc. 73 at ¶ 1]; *see generally* [Doc. 68-3 at 2].

9.      The United States has held the Property since the 1943 Deed was recorded. [Doc. 68 at ¶ 6; Doc. 73 at ¶ 1; Doc. 68-4 at ¶ 4].

10.     In 1981, a letter was written from the Chief of the Real Estate Division of the United States Army Corps of Engineers to the Commander of the United States Army Corps of Engineers (the "1981 Letter"), which included a "list of the tracts with minerals reserved," and which list named David McD. Graham as holding interest to the mineral

---

[3] Plaintiffs attempt to deny these assertions on the basis that they are "premised on the false presumption that such a Deed in the normal course of events would ever contain exceptions or any recitation as to previously severed minerals."  [Doc. 73 at ¶ 2].  But Plaintiffs do not cite any evidence rebutting Defendant's assertion or creating a genuine dispute of fact as to the contends of the 1943 Deed.  Accordingly, the Court deems this fact undisputed.  *See* Fed. R. Civ. P. 56(e).  And furthermore, to the extent Plaintiffs' argument could be substantively considered in the Court's analysis in this Order, Plaintiffs do not support their assertion that a deed recorded in the normal course would not mention previously severed mineral rights.  *See* [Doc. 73 at ¶ 2].

rights of 80 acres of land that would become the Rocky Mountain Arsenal.  [Doc. 73 at ¶ 16; Doc. 75 at ¶ 16; Doc. 73-11 at 1–2].[4]

### C.    Analysis

The Quiet Title Act is the "exclusive means by which adverse claimants [may] challenge the United States' title to real property."  *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983).  Through the Act, Congress waived the federal government's sovereign immunity to "suits seeking to quiet title to certain federal lands," *Sw. Four Wheel Drive Ass'n v. Bureau of Land Mgmt.*, 363 F.3d 1069, 1071 (10th Cir. 2004), and the United States may be sued "to adjudicate a disputed title to real property in which the United States claims an interest," 28 U.S.C. § 2409a(a).

The Quiet Title Act contains a twelve-year statute of limitations, *see id.* § 2409a(g), which is "strictly construed" in the government's favor, *see Rio Grande Silvery Minnow (Hybognathus amarus) v. Bureau of Reclamation*, 599 F.3d 1165, 1176 (10th Cir. 2010). A cause of action under the Act accrues when the plaintiff or his or her predecessor in interest "knew or should have known of the claim of the United States" to the subject property.  28 U.S.C. § 2409a(g); *Rosette, Inc. v. United States*, 141 F.3d 1394, 1397 (10th Cir. 1998).  A "claim" is defined as "some interest adverse to the plaintiff's" or "an assertion of right to something."  *George v. United States*, 672 F.3d 942, 946 (10th Cir. 2012) (quotation omitted).  "Knowledge of the claim's full contours is not required" for there to be sufficient notice of a claim under § 2409a(g)—"[a]ll that is necessary is a reasonable

---

[4] The Parties dispute the appropriate characterization of the 1981 Letter but do not dispute its contents.  *See* [Doc. 73 at ¶ 16; Doc. 75 at ¶ 16].

awareness that the Government claims *some interest adverse* to the plaintiff's." *Knapp v. United States*, 636 F.2d 279, 283 (10th Cir. 1980) (emphasis added).

As a federal statute, the Quiet Title Act "must be interpreted in accordance with principles of federal law," but courts "may properly look to state law as an aid in determining the application of statutory language to specific facts." *Vincent Murphy Chevrolet Co. v. United States*, 766 F.2d 449, 451 (10th Cir. 1985) (quotation omitted). "Local practices and local rules are particularly indicative of whether a party should have known a relevant fact," and "questions involving ownership, transfer and title to real estate have traditionally been resolved according to the laws of the state where the realty is located." *Amoco Prod. Co. v. United States*, 619 F.2d 1383, 1387 (10th Cir. 1980).

Defendant moves for summary judgment on its affirmative defense that Plaintiffs' claim is barred by the Quiet Title Act's statute of limitations. [Doc. 68 at 4]. It contends that the recordation of the 1943 Deed triggered the filing period because it was sufficient to put Plaintiffs' predecessors in interest on notice of the United States's claim to the Property's mineral rights. [*Id.* at 4–7]. And because more than twelve years have passed since the 1943 Deed was recorded, Defendant concludes that Plaintiffs' claim to quiet title is time-barred. [*Id.* at 7].

Plaintiffs respond that neither they nor their predecessors in interest had any notice, actual or constructive, of the United States's claim to the mineral rights until 2018. [Doc. 73 at ¶ 18]. They argue that their predecessors in interest cannot be charged with constructive notice from the 1943 Deed based "in part" on the 1981 Letter, which Plaintiffs claim "confirm[s] that David McD. Graham and his successors-in-interest hold right, title, and interest to the minerals at issue in this action." [*Id.* at ¶ 19]. They assert that if the

Tiedemans did not own the mineral rights, then the 1943 Deed would not provide "any notice at all" about any adverse claim to the mineral rights. [*Id.* at ¶ 26]. Plaintiffs concede that "the available recorded deeds provide no evidence that the minerals and surface were severed" but insist that "there is clearly some question as to whether such did occur," based on the 1978 and 1981 Letters. [*Id.* at ¶ 32]. They contend that the 1978 Letter raises a genuine dispute of fact that precludes entry of summary judgment. [*Id.*].

The question before the Court, then, is whether the undisputed facts demonstrate that the 1943 Deed put Plaintiffs' predecessors in interest on notice of the United States's claim to the Property's mineral rights. For the following reasons, the Court is respectfully persuaded by Defendant's position that they do.

First, it is undisputed that the Tiedemans conveyed the Property to the United States through the 1943 Deed and that the 1943 Deed was publicly recorded. [Doc. 68 at ¶¶ 4–5; Doc. 73 at ¶ 1; Doc. 68-3 at 2]. Colorado employs a race-notice recording scheme. *See* Colo. Rev. Stat. § 38-35-109. "Under Colorado's race-notice statute, . . . [the] proper recording of documents provides constructive notice of interests affecting title." *Collins v. Scott*, 943 P.2d 20, 22 (Colo. App. 1996); *see also Meyer v. Haskett*, 251 P.3d 1287, 1293 (Colo. App. 2010) ("When an instrument regarding property is properly recorded, constructive notice is provided to all."). "Constructive notice is, for all practical purposes, record notice. When a party properly records [its] interest in property with the appropriate clerk and recorder, [it] constructively notifies 'all the world' as to [its] claim." *Franklin Bank, N.A. v. Bowling*, 74 P.3d 308, 313 (Colo. 2003). Thus, based on the undisputed facts of this case, the recording of the 1943 Deed provided constructive notice

"to all," including Plaintiffs' predecessors in interest, of the United States's claim to the Property.

Second, it is undisputed that the 1943 Deed did not contain any express reservation of mineral rights and did not expressly except from the conveyance any previous conveyance of mineral rights. [Doc. 68 at ¶¶ 9–10; Doc. 73 at ¶ 2]; *see generally* [Doc. 68-3 at 2]; *see also Bolser v. Bd. of Comm'rs for Cnty. of Gilpin*, 100 P.3d 51, 53 (Colo. App. 2004) ("A reservation . . . occurs where the granting clause conveys the totality of the land described, but reserves to the grantor one or more of the rights that would comprise a fee simple absolute."). It is further undisputed that the 1943 Deed did not expressly limit the conveyance to the Property's surface estate. [Doc. 68 at ¶ 11; Doc. 73 at ¶ 1; Doc. 68-3 at 2].

"It is well established that a conveyance of land by general description, without any reservation of a mineral interest, passes title to both the land and the underlying mineral deposits." *O'Brien v. Vill. Land Co.*, 794 P.2d 246, 249 (Colo. 1990); *see also McCormick v. Union Pac. Res. Co.*, 14 P.3d 346, 349 (Colo. 2000) ("The reservation of a mineral estate necessarily severs it from the surface estate, creating multiple estates in the same land."). Thus, it is undisputed that the 1943 Deed, on its face, did not contain any clear language suggesting that the Tiedemans' conveyance of the Property to the United States was limited to the Property's surface estate or excepted the Property's mineral rights.

Third, it is undisputed that the 1943 Deed states that the Tiedemans conveyed the Property

> as of good, sure, perfect, absolute and indefeasible estate of inheritance, in law, in fee simple, and have good right, full power and lawful authority to grant, bargain, sell and convey the same in manner and form as aforesaid,

and that the same are *free and clear from all . . . encumbrances* of whatever kind or nature soever.

[Doc. 68 at ¶ 8; Doc. 73 at ¶ 1; Doc. 68-3 at 2 (emphasis added)].  "A good and sufficient title in fee simple means the legal estate . . . free and clear of all valid claims, liens and encumbrances whatsoever."  *Walpole v. State Bd. of Land Comm'rs*, 163 P. 848, 850 (Colo. 1917) (quotation omitted), *superseded by statute on other grounds as stated in Driscoll v. State*, 297 P. 989, 989 (Colo. 1931).  "An encumbrance . . . is a right or interest in the land which diminishes the value of, but is not inconsistent with the ability to convey, fee title," *Feit v. Donahue*, 826 P.2d 407, 410 (Colo. App. 1992), and a reservation of mineral rights constitutes an encumbrance, *Eychaner v. Springer*, 527 P.2d 903, 904 (Colo. App. 1974).  It is thus undisputed that the face of the 1943 Deed, which provided constructive notice of the United States's claim to the Property, purported to provide notice of the United States's claim to the *entirety* of the Property, without any encumbrances, including any reservations of mineral rights, and did not itself work to sever the mineral estate from the surface estate.  *See Osborne v. Holford*, 575 P.2d 866, 867 (Colo. App. 1978) (a severance "can be accomplished only by clear and unambiguous language").

Finally, it is undisputed that the available recorded Property deeds do not demonstrate that the Property's mineral estate was ever severed from the surface estate. [Doc. 68 at ¶ 12; Doc. 73 at ¶ 1].  In other words, there is no evidence presently before the Court that, at some point after David McD. Graham's death and before the Tiedemans' conveyance, the mineral rights were severed into a separate estate and were not included in the 1943 Deed's conveyance.

The Quiet Title Act's "should have known" language "import[s] a test of reasonableness." *Amoco*, 619 F.2d at 1388.  Because questions of ownership, transfer, and title are resolved according to the laws of the state in which the property is located, *id.* at 1387, and because Colorado law provides that the recording of a deed provides notice "to all" of an interest affecting property, *Meyer*, 251 P.3d at 1293, the Court finds that the recording of the 1943 Deed provided constructive notice to Plaintiffs' predecessors in interest of the United States's claim to the Property.  And because the 1943 Deed has no express exclusion of mineral interests, no express limitation to the Property's surface estate, and a clear statement that the conveyance of the fee simple estate is free of encumbrances, the constructive notice includes notice of the United States's claim to the *entirety* of the Property, including the associated mineral interests. *Cf. California ex rel. State Land Comm'n v. Yuba Goldfields, Inc.*, 752 F.2d 393, 397 (9th Cir. 1985) (concluding that "the United States' clear interest [was] evidenced by the existence of quitclaim deeds," which "constituted a cloud on California's title").  In sum, based on the undisputed facts, Plaintiffs' predecessors had at least constructive notice that the United States "claim[ed] some interest adverse to" Plaintiffs, *Knapp*, 636 F.2d at 283, at the time the 1943 Deed was recorded.

Plaintiffs' arguments attempting to create a genuine dispute of fact precluding summary judgment are respectfully unpersuasive.  First, Plaintiffs contend that a conclusion that the 1943 Deed provided constructive notice of the United States's claim is "mistaken" because "if the Grantors of the 1943 Deed," i.e., the Tiedemans, "did not own the minerals, [then] the Deed would not provide any notice at all as to minerals." [Doc. 73 at ¶ 26]; *see also* [*id.* at ¶ 29 ("[A] Deed can convey only what is owned by a

Grantor.")].   But Plaintiffs concede that there is no evidence that a severance ever occurred, *see* [*id.* at ¶¶ 1, 32], and they direct the Court to no evidence supporting their assertion that their predecessors in interest "believe[d] [the 1943 Deed] to only relate to the surface estate," *see* [*id.* at ¶ 36], or otherwise negating the effect of the 1943 Deed *at the time the Deed was recorded*.   Nor do Plaintiffs attempt to square their predecessors' purported subjective belief with the express language of the 1943 Deed, which purports to convey the entirety of the Property, not just the surface estate.   Even making the same assumption as Plaintiffs and assuming (without evidence, *see* [*id.* at ¶ 32 (Plaintiffs "admit[ting] that the available recorded deeds provide no evidence that the minerals and surface were severed")]) that there had been some severance of the mineral estate and the Tiedemans did not own the mineral rights, the 1943 Deed still purported to convey the entirety of the Property to the United States, therefore putting Plaintiffs' predecessors in interest on notice of the United States's adverse claim to the minerals.

Plaintiffs also rely on the 1978 Letter and the 1981 Letter, asserting that these documents create a question of fact "as to whether the 1943 Deed [c]onveyed minerals such that a Motion for Summary Judgment may not be granted."   [*Id.*].   But all these Letters might do is raise a question about the validity of the United States's claim to the mineral rights.   The Letters, authored over three decades after the 1943 Deed was recorded, do not negate the effect of the 1943 Deed or the fact that the 1943 Deed was sufficient to put Plaintiffs' predecessors in interest on notice of the United States's claim to the mineral interests.   Indeed, whether the United States's claim is valid is not material to the timeliness determination—it is "enough [that Plaintiffs'] predecessors were legally charged with knowing" of the claim.  *George*, 672 F.3d at 946; *see also Spoolstra v. United*

*States*, No. 3:12-cv-00340-BLW, 2013 WL 2554525, at *3 (D. Idaho June 7, 2013) ("[T]he statutory period began to run when Spoolstra's predecessors reasonably should have known that the government had a conflicting claim to property he claims is his exclusively, regardless of how strong he believed that claim to be."); *cf. Lund v. United States*, No. 3:19-cv-02015-AR, 2022 WL 19039088, at *11 (D. Or. Dec. 7, 2022) (acknowledging that email communications occurring decades after easement was recorded "may have generated confusion" as to the scope of the easement, but did not negate notice provided by recording of easement in 1955), *report and recommendation adopted*, 2023 WL 2572613 (D. Or. Mar. 17, 2023).

Finally, the case relied on by Plaintiffs, *Northern Improvement Co. v. United States*, 398 F. Supp. 3d 509 (D. Ariz. 2019); *see also* [Doc. 73 at ¶ 36], is distinguishable.  In that case, the court concluded that the recording of a deed, which "excepted 'all oil, gas, coal and minerals, as reserved'" from the conveyance and which "clearly provided notice that the government had acquired the surface interest" in the land, did not provide constructive notice of any governmental claim to the *sub*surface sand or gravel because the government's acquisition of the surface estate "was not inconsistent with [the mineral rights owner's] right to sand and gravel."  *N. Improvement Co.*, 398 F. Supp. 3d at 513, 516–17.  Conversely, the recording of a deed for property in fee simple and free from all encumbrances, without any limitation to the surface estate, could reasonably be deemed inconsistent with a purported mineral rights owner's claim to the associated minerals.

The Court is mindful that the doctrine of constructive notice "is a harsh doctrine which should be resorted to reluctantly and construed strictly."  *Amoco*, 619 F.2d at 1388. The Court does not make this ruling lightly.  But Plaintiffs have not directed the Court to

any evidence demonstrating a genuine dispute of material fact with respect to the effect of the 1943 Deed.  And as explained above, Plaintiffs cannot use the federal court system to engage in a fishing expedition for some hypothetical documents that are, as of yet, not locatable.

For the reasons set forth in this Order, there is no genuine dispute of material fact that the 1943 Deed provided constructive notice of the United States's claim to the mineral rights associated with the Property.  This constructive notice triggered the Quiet Title Act's twelve-year statute of limitations.  *See* 28 U.S.C. § 2409a(g).  Accordingly, Plaintiffs' claim is time-barred.  Defendant's Motion for Summary Judgment is respectfully **GRANTED**.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)   Plaintiffs' Motion to Postpone Ruling on Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(d) [Doc. 74] is **DENIED**;

(2)   Defendant's Motion for Summary Judgment [Doc. 68] is **GRANTED**;

(3)   Judgment is entered in Defendant's favor;

(4)   Defendant is awarded its costs pursuant to Rule 54(d) and D.C.COLO.LCivR 54.1; and

(5)   The Clerk of Court is directed to **CLOSE** this case.

DATED:  February 23, 2024                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge